**RECEIVED**

USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK

DATE _b / 11 / 12_

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

THADDEUS RAY PARKS,             CIVIL ACTION
         Appellant               1:11-cv-1788

VERSUS

U.S. COMMISSIONER OF SOCIAL      JUDGE DEE D. DRELL
SECURITY,                        MAGISTRATE JUDGE JAMES D. KIRK
         Appellee


REPORT AND`` RECOMMENDATION OF MAGISTRATE JUDGE

Thaddeus Ray Parks ("Parks") was awarded supplemental security income ("SSI") benefits pursuant to an application made on his behalf on May 9, 2006 (Tr. p. 106), at age seventeen, because he had developed Ewing's sarcoma[1] and met Listing 113.03 (Tr. p. 16). After Parks attained age eighteen, the Social Security Administration ("SSA") determined, both initially and on reconsideration,[2] that, as of March 9, 2009, Parks' medical condition had improved and he was no longer disabled as defined by the Social Security Act, so his SSI benefits were terminated (Tr. pp. 16, 18, 31-39). Parks requested a de novo hearing before an Administrative Law Judge ("ALJ") (Tr. p. 40).

A de novo hearing was held before an administrative law judge

---

[1] Ewing's sarcoma is a malignant (cancerous) bone tumor that affects children. MEDLINEplus Health Information, Medical Encyclopedia: Ewing's sarcoma, *available at* http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[2] On reconsideration, a hearing was held before a disability hearing officer (Tr. p. 28).

("ALJ") on May 6, 2010, at which Parks appeared with his attorney (Tr. pp. 757-786). The ALJ found that, as of March 9, 2009, Parks suffered from severe impairments of "status post Ewing's sarcoma with residual effects" (Tr. p. 11), but had the residual functional capacity to perform the full range of sedentary work (Tr. p. 11) and Medical-Vocational Rule 201.27 directed a finding of "not disabled" (Tr. p. 14).

Parks requested a review of the ALJ's decision, but the Appeals Council declined to review it and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Parks next filed this appeal for judicial review of the Commissioner's final decision. Parks raises the following grounds for relief on appeal:

> 1. The ALJ improperly rejected the restrictions assessed by the claimant's treating doctor without good cause.
>
> 2. The ALJ did not comply with 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2), failing to articulate good reasons to reject the opinion of the treating physician.
>
> 3. No evidentiary choices support the ALJ's finding that the claimant can perform a full range of sedentary work.
>
> 4. The ALJ failed to follow agency policy as reflected in 20 C.F.R. §404.151(e) and 416.912(e), requiring that the treating source be re-contacted in this context.
>
> 5. The record establishes difficulty with prolonged sitting, and the ALJ did not utilize a vocational expert to consider the extent of compromised to the sedentary occupational base. The ALJ's error in finding that the claimant retains the capacity to perform a full range of sedentary work is not harmless; without vocational expert testimony addressing the claimant's non-exertional imitations, the Commissioner's burden of proof at the final step in the sequential evaluation process is unsatisfied.

2

## Eligibility for SSI Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3). The earliest month for which an eligible SSI claimant can receive benefits is the month following the month his application was filed, 20 C.F.R. § 416.335, or the month following the month during the pendency of the application that the claimant meets all the eligibility requirements, 20 C.F.R. § 416.330(a).

### Summary of Pertinent Facts

#### 1. Medical Records

In May 2005, Parks reported shooting pain down his right leg (Tr. p. 280). In March 2006, Parks was diagnosed with Ewing's sarcoma on his sacrum[3] at St. Jude's Children's Hospital (Tr. p.

---

[3] The sacrum is the part of the spinal column that is directly connected with or forms a part of the pelvis by articulation with the ilia and that in humans forms the dorsal wall of the pelvis and consists of five fused vertebrae diminishing in size to the apex at the lower end which bears the coccyx. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Sacrum, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

3

238); an MRI revealed a lobular, complex lesion of the right hemisacrum with an associated soft tissue component that breaks through the anterior cortex at about the level of the S-1 and S-2 neuro-foramina, both foramina were impinged on, and there was one additional lytic,[4] avid lesion in the metaphysis[5] of the right proximal tibia which was not cancerous (Tr. p. 280), but his bone marrow was negative (Tr. p. 304).  Parks underwent one year of radiation therapy and chemotherapy at St. Jude's Children's Hospital (Tr. pp. 249, 280, 304, 307, 509).

Parks was reexamined at St. Jude's Children's Hospital in March 2008, when he was nineteen years old (Tr. p. 476).  In the Ambulatory Care Unit Clinic, Parks was found to be physically active, denied having any pain or problems (Tr. p. 476), there was no evidence of recurrence of the sarcoma, and the exam was unremarkable (Tr. p. 479).  An MRI of Parks' pelvis showed no new abnormalities (Tr. p. 530).  An x-ray of Parks' pelvis showed normal sacroiliac joints and normal, properly located hips, but

---

[4] "Lytic" means of or relating to lysis.  "Lysis" means a process of disintegration of dissolution (as of cells).  MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Lytic, Lysis, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[5] "Metaphysis" means the transitional zone at which the diaphysis (shaft of a long bone) and epiphysis (an end of a long bone) of a bone come together.  MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Metaphysis, Diaphysis, Epiphysis, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

4

there was perhaps slight encroachment on the right S1 neuro-foramen (nerve opening) (Tr. p. 534).

On April 14, 2008, Parks was diagnosed with symptomatic gallstones and his gall bladder was removed by Dr. James Bordelon (Tr. p. 482, 581, 667-669). Post surgery, Parks had an increase in bilirubin with symptoms of biliary colic (severe pain, nausea, vomiting, and a rise in liver enzymes), so he was transferred to Rapides Regional Medical Center on April 16, 2008, where he was diagnosed with obstructive jaundice and he was found to have passed sludge and tiny stones (Tr. pp. 583-586).

Parks was examined again in December 2008, when he was twenty years old; no changes were noted (Tr. pp. 498-499). On examination March 2009, there was no clinical evidence of disease and Parks denied pain (Tr. p. 510). He had no tenderness to palpation along his sacrum and hip, his right hip had a normal range of motion and equal, bilateral strength, and his gait and balance were within normal limits (Tr. p. 512). An MRI of Parks' pelvis and sacrum showed stable post-therapy changes of the upper sacrum without evidence of tumor recurrence (Tr. p. 516). The MRI also showed questionable thickening of the sigmoid colon that needed clinical correlation (Tr. p. 517).

On June 23, 2009, Parks reported pain in his low back, usually intermittent and mostly with activity, that felt like stiffness, achiness, and muscular aches (Tr. p. 555, 564). Examination of the sacrum revealed minimal tenderness on deep palpation, no abnormality of the skin, no bony masses, and normal strength in

5

bilateral lower extremities (Tr. p. 570). An MRI and an x-ray were unchanged from before (Tr. pp. 574, 576). A physical therapy evaluation showed that pain limited Parks' function, but he had a good prognosis for improved function and was told to continue his home exercise program (Tr. p. 560).

In December 2009, Parks reported worsening back pain, exacerbated with prolonged standing or walking (Tr. p. 603). Parks reported his pain as mild to moderate tenderness in the sacral region at the site of his treatment that was noticeably worse with significant walking or physical exertion (Tr. p. 609). Parks reported the pain was not radiating, not dull, and not sharp (Tr. p. 608). Examination of Parks' sacrum revealed minimal tenderness on deep palpation to the mid and right region of his tailbone (Tr. p. 609). Parks was advised to avoid Aleve and take Advil for back pain (Tr. p. 604). X-rays and an MRI of Parks' pelvis showed it was stable (Tr. p. 605).

In February 2010, Parks reported intermittent back pain for several months to Dr. Beau P. Brouillette, who noted that Parks' back had been examined and "cleared" the previous month at Parks' check up at St. Jude's Children's Hospital (Tr. p. 597). Dr. Brouillette found Parks's back had a full range of motion with some tenderness on extension and flexion, his strength was 5/5 bilaterally in his lower extremities, and he had negative straight leg raises (Tr. p. 597). Dr. Brouillette prescribed a Medrol Dosepak and restarted Parks' Neurontin prescription (Tr. p. 597).

In May 2010, Dr. Najat Daw, an oncologist and Parks' treating

6

physician, wrote that Parks had been under his care at St. Jude's Children's Hospital since 2006 for "inoperable Ewing sarcoma of the sacrum (bone in the pelvis)" (Tr. p. 687). Dr. Daw stated that Parks was treated with intensive chemotherapy and radiation from March 2006 through April 2007, and evaluated periodically for recurrence and therapy side effects (Tr. p. 687). Dr. Daw noted that Parks' primary treatment side effects have been decreased endurance and progressively worsening back pain, and stated Parks is likely to have sustainability issues in terms of his ability to maintain activities on a week to week and month to month basis (Tr. p. 687). Dr. Daw stated that, if Parks works full time, he will need to probably miss work several days a month (Tr. p. 687).

On June 30, 2010, Parks had a 48 month follow-up exam at St. Jude's Children's Hospital (Tr. p. 700). Parks reported daily pain in his right hip/spine area and, if he is seated on the floor and attempts to get up, he requires assistance or has to pull up on furniture to come up into standing (Tr. p. 708). Parks reported his right hip pain was 4/10 daily and 7/10 with activity (Tr. p. 708). Parks again had minimal tenderness to deep palpation in the mid and right region of his tailbone, where he received treatment, which increased with activity and he was prescribed Aleve (Tr. p. 700). Dr. Daw's addendum to this report stated he had a stable to slightly improved right sacral ala Ewing sarcoma residual, and a possible small Schmorf's node[6] or focal area of osteonecrosis,

---

[6] A Schmorf's node is a spinal defect characterized by protrusion of the nucleus pulposus into the spongiosa of a vertebra. MEDLINEplus Health Information, Merriam-Webster

probably at S1, which was seen only on a single image (Tr. p. 700). Parks was prescribed Ibuprofen for pain and Zantac for GI problems (Tr. p. 703).

A physical therapy evaluation in June 2010 showed Parks was slow to move but otherwise independent in his mobility except for transferring from floor to standing (Tr. p. 709). Parks had diminished strength, a limited range of motion, and pain limiting function (Tr. p. 712). Parks was given a home exercise program to improve his range of motion and was advised to engage in low or no impact activities such as cycling or swimming to increase his endurance (Tr. p. 712).

A check-up at St. Jude's on August 27, 2010, showed that Parks ambulated with a steady gait (Tr. p. 735). Parks still had sacral tenderness on deep palpation and his motor function was grossly normal (Tr. p. 735).

### 2. May 6, 2010 Administrative Hearing

Parks testified that he was 21 years old, right-handed, 5'6" tall, weighed about 145 pounds, and lived with his wife, mother, and eleven year old brother (Tr. pp. 760-761). Parks testified that his wife was a full time student at LSU-Alexandria (Tr. p. 761). Parks testified that his sole income was SSI (Tr. p. 761). Parks testified that he drives vehicles with automatic transmissions, and is a full time student as a sophomore at LSU-

---

Medical Dictionary: Schmorf's node, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

Alexandria, majoring in liberal arts with a concentration in English (Tr. pp. 761-762). Parks testified that his grade point average was around 3.25, he used a computer both at home and at school, and he usually traveled from home to LSU-Alexandria three to four days a week (Tr. p. 762). Parks spends two to three hours a day at school (Tr. p. 779). Parks testified he cannot attend school five days a week, three hours a day because of pain and his need to rest (Tr. p. 779).

Parks testified that, when he started college, he took eighteen hours, but had to drop a class because he had difficulty doing that much, so he only had fifteen hours (Tr. p. 763). Parks testified that, with fifteen credit hours a semester, he was at school one to two hours a day, but he began having difficulty doing even that due to his treatment side effects, and he missed a lot of school (Tr. p. 763). Parks testified that the side effects have gotten worse since the chemotherapy stopped (Tr. p. 764). Parks testified that most of his professors have made accommodations for him (Tr. pp. 779-780).

After treatment, Parks took Neurontin, but had to discontinue it due to side effects (Tr. p. 764). Parks also testified that he had to stop taking Aleve because it caused erosion of his liver, shown by blood in his urine (Tr. p. 764). Parks testified that he takes Excedrin Back and Body occasionally, when he needs it (Tr. pp. 764-765). Parks testified he still has a tumor, as a bone mass, but that it is not active and it has degenerated the bones around it (Tr. p. 765). Parks testified that his radiation therapy

9

stopped in about August 2006 and his chemotherapy stopped in April 2007 (Tr. p. 765). Parks graduated from high school in 2006 and started college in Fall 2007 (Tr. p. 766). Parks testified that he plans to eventually teach English, preferably at college level because the schedule would better fit his problems (Tr. p. 767); Parks testified he would really like to teach online classes, so he could work from home even when he felt bad (Tr. p. 781). Parks testified that he can start teaching with a Master's degree, but would like to get a doctorate (Tr. p. 767).

Parks testified that he cooks and helps with grocery shopping (Tr. p. 767). Parks testified he can comfortably hold ten pounds, but he cannot lift anything from the floor due to pain (Tr. p. 768). Parks does not use a back brace (Tr. p. 768). Parks testified he took physical therapy for muscular leg pain, which resolved those problems, but he has not taken physical therapy for his back (Tr. pp. 768-769).

Parks testified he can sit for twenty to thirty minutes, then has to get up for a few minutes, so he walks out of class during a lecture (Tr. p. 769). Parks testified that hot and cold packs do not work very well (Tr. p. 769).

Parks testified that, when he does not have any school work to do, he only spends thirty minutes to an hour a day on his computer (Tr. p. 770). Parks testified that, when he has to write a paper for school, he spends one to two hours a day on his computer (Tr. p 770).

Parks testified that he does not exercise due to back pain,

10

but he was very active in sports and at the gym before he was sick (Tr. p. 770). Parks testified that he can swim (Tr. p. 772).

Parks further testified that his high-dose chemotherapy left him with a weakened immune system, which has resulted in digestive infections, and two surgeries to remove his gall bladder, gall stones, and bile (Tr. pp. 774-775). Parks testified he still has frequent nausea, upset stomach, heartburn, and acid reflux (Tr. p. 775). Parks testified his weight remains in a range between 140 and 154 pounds (Tr. p. 776). Parks also testified that, last January, he had a fever blister on his lip that turned into a fast-spreading staph infection in two days (Tr. p. 778); Parks testified it took two weeks to heal that infection (Tr. p. 778). As examples of how his immune system has been compromised, Parks testified that a cold tends to turn into strep throat and sneezing turns into an upper respiratory infection (Tr. p. 778). Parks testified he is sick about one third of the time (Tr. p. 778). Parks testified the first cyst was in 2008, and he recently had another on his spine, attached to a sacral lobe, which his doctors are watching (Tr. p. 783).

Parks also testified that his was only the third diagnosed case of Ewing's sarcoma in the United States and his treatment was an experimental protocol for which the side effects were not entirely known (Tr. p.777).

Parks testified that he misses about one day of school per week due to illness or back pain, even though he only has class three to four days per week (Tr. p. 779). Parks testified that, if

11

he worked three eight-hour days per week, with the ability to make positional changes and walk a little if necessary, he would need to rest for a week and a half afterward (Tr. p. 780).

Parks testified he was given morphine and other pain medications when he was on chemotherapy, and he had a problem with addiction toward the end of his treatment (Tr. p. 780). Parks testified that is why he will not use addictive pain medication now (Tr. p. 780). Parks testified that, if he used the heavy-duty pain medication, he would not be able to pay attention in school (Tr. p. 781). Parks testified that he is very sensitive to steroids, and the Medrol Dosepak that Dr. Brouillette prescribed him, for what they then believed to be back-muscle pain, did not really help (Tr. p. 783).

<u>ALJ's Findings</u>

Once a social security claimant reaches the age of 18, his claim becomes subject to a new redetermination under adult standards for disability, using the rules for determining initial eligibility, rather than any medical improvement standard. 20 C.F.R. § 416.987.[7] See also, <u>Earp v. Commissioner of Social</u>

---

[7] Redeterminations were one of the major realignments of Social Security law under Public Law 104-193, commonly known as the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA). <u>Wagner v. Commissioner of Social Security</u>, 2010 WL 3036763, *3 (N. D.Ohio2010), citing 42 U.S.C. § 1382c(a)(H)(iii). This act requires redetermination of SSI beneficiary eligibility after the individual attains the age of 18, where the individual was awarded for SSI disability benefits prior to age 18. 42 U.S.C.A. § 1382c; 20 C.F.R. §416.987.
Under the Act, a plaintiff's childhood award is to be redetermined when he or she reaches age 18 by applying the criteria used in determining initial eligibility for individuals who are age 18 or older. 42 U.S.C. § 1382c(a)(3)(H)(iii), 20

12

Security Admin., 168 F.Supp.2d 628, 632 (E.D.Tex. 2001).

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Parks (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

---

C.F.R. § 416.987(b). The regulations provide that the claimant may be found not now disabled even though he or she was previously found disabled. 20 C.F.R. §§ 416.987(a)(2), 404.1587(a)(2).

A claimant has the burden of providing a complete record detailed enough to enable the Commissioner to make a disability determination.  Landsaw v. Secretary of Human Services, 803 F.2d 211, 214 (6th Cir.1986).  Similarly, a claimant has the burden of proving (1) his or her disability by establishing a physical or mental impairment that results from anatomical, physiological, or psychological abnormalities by medically acceptable clinical and laboratory diagnostic techniques (2) that such physical or mental impairment lasted at least one year and (3) that physical or mental impairment prevents him or her from engaging in substantial gainful activity.    42  U.S.C.  §§  423(d)(1)(A),  423(d)  3),  1382(3)©, 1382c(a)(3)(A).

In the case at bar, the ALJ found that Parks attained age 18 in August 13, 2006, was eligible for SSI as a child the month before he attained age 18, and he was notified he was found no longer disabled on March 1, 2009 (Tr. p. 11).  The ALJ also found that Parks has a severe impairment of status-post Ewing's sarcoma with residual effects (Tr. p. 11), but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 20).  The ALJ then found that, as of March 1, 2009, Parks had the residual functional capacity to perform the full range of sedentary work (Tr. p. 11, he did not have any past relevant work (Tr. p. 13), and he was a younger individual with at least a high school education (Tr. p. 14).   The ALJ found that Rule 201.27 of the Medical-Vocational Guidelines, Appendix II, Table 1 ("the Grids"), directed a

conclusion of not disabled (Tr. p. 16), and that Parks was not no longer disabled as of March 1, 2009 (Tr. p. 16).

### Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there are any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v.

Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Law and Analysis

Grounds 1 & 2 - Treating Physician

Parks contends the ALJ improperly rejected the restrictions assessed by the claimant's treating doctor, Dr. Daw, without good cause, and did not comply with 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2), by failing to articulate good reasons for rejecting the opinion of the treating physician.

Generally, the opinion of a treating physician deserves to be given greater weight than that of a non-treating or consulting physician.  Carry v. Heckler, 750 F.2d 479, 484 (5th Cir. 1985). However, the weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings.  Elzy v. Railroad Retirement Board, 782 F.2d 1223, 1225 (5th Cir. 1986); Jones v. Heckler, 702 F.2d 616, 621 (5th Cir. 1983).  An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled.  It must be supported by clinical or laboratory findings.

16

<u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (5th Cir. 1981).

In <u>Myers v. Apfel</u>, 238 F.3d 617, 621 (5th Cir. 2001), the Fifth Circuit stated it has long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability. However, the opinion of the treating physician is not conclusive and the ALJ must decide the claimant's status. Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions recognized by the Fifth Circuit include disregarding statements that are brief, conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. An ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. <u>Myers</u>, 238 F.3d at 621, citing <u>Newton v. Apfel</u>, 209 F.3d 448, 456 (5th Cir. 2000).

The ALJ stated he did not give any weight to Dr. Daw's opinion as to Parks' back pain and decreased endurance any weight, because it is not supported by clinical and laboratory findings; the ALJ states the evidence does not indicate that Parks has any problems with sustainability, decreased endurance, worsening back pain, or numerous infections (Tr. p. 13). The ALJ stated the evidence shows

Parks has only minimal tenderness on deep palpation of his tailbone area which increases with activity, no problem with his gait, and negative straight leg raising (Tr. p. 13). The ALJ relied on Parks' February 2010 physical evaluation by Dr. Brouillette, a family medicine doctor who apparently saw Parks only once, and appears to have treated Parks' sacral pain as muscular pain (Tr. p. 597).

The ALJ also stated that, since Parks attends college, uses a computer, cooks, and does some household chores, Parks can perform at least sedentary level work. The ALJ did not discuss whether Parks can sit for up to six hours in an eight hour day (sedentary work), five days a week, and did not discuss whether Parks' needs to periodically alternate sitting and standing. Instead, the ALJ found Parks does not have any non-exertional impairments and relied on the Medical-Vocational Guidelines to find Parks is not disabled.

A physical therapy evaluation in June 2010 showed Parks was slow to move but otherwise independent in his mobility except for transferring from floor to standing, had diminished strength, a limited range of motion, and pain limiting function, and was given a home exercise program to improve his range of motion and advised to engage in low or no impact activities such as cycling or swimming to increase his endurance (Tr. pp. 709, 712). At his June 2010, 48 month follow-up exam at St. Jude's, Parks reported daily pain in his right hip/spine area, he requires assistance or has to pull up on furniture to come up into standing if he tries to get up from being seated on the floor,, his right hip pain was 4/10

18

daily and 7/10 with activity, and he had minimal tenderness to deep palpation in the mid and right region of his tailbone, where he received treatment, which increased with activity (Tr. pp. 700, 708). Dr. Daw's addendum to this report stated Parks had a stable to slightly improved right sacral ala Ewing sarcoma residual, and a possible small Schmorf's node[8] or focal area of osteonecrosis, probably at S1 (Tr. p. 703). Parks' check-up at St. Jude's in August 2010 showed that Parks ambulated with a steady gait and his motor function was grossly normal, but he still had sacral tenderness on deep palpation and his motor function was grossly normal (Tr. p. 735).

The ALJ's finding that there was no evidence to support Parks' claims of "sustainability issues" is incorrect. Parks testified as to his problems attending too many classes in a day and going to school five days a week, and the fact that he needs his school professors to accommodate his need to periodically get up and walk around outside the classroom. Parks' long-time treating oncologist, Dr. Daw, stated that Parks' primary treatment side effects were decreased endurance and gradually increasing back pain, and noted that Parks was likely to have sustainability issues in terms of his ability to maintain activities on a week to week and month to month basis (Tr. p. 687). Parks' testimony and the

---

[8] A Schmorf's node is a spinal defect characterized by protrusion of the nucleus pulposus into the spongiosa of a vertebra. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Schmorf's node, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

treating physician's opinion constitute evidence as to Parks' "sustainability issues."

The ALJ substituted his inexpert opinion of Parks' medical condition for that of Dr. Daws and found that Parks does not have any sustainability problems or nonexertional impairments. An administrative law judge may not arbitrarily reject uncontroverted medical testimony. <u>Goodley v. Harris</u>, 608 F.2d 234 (5th Cir. 1979). <u>Strickland v. Harris</u>, 615 F.2d 1103, 1110 (5th Cir. 1980). The ALJ cannot reject a medical opinion without an explanation. <u>Strickland</u>, 615 F.2d at 1110; <u>Goodley v. Harris</u>, 608 F.2d 234, 236 (5th Cir. 1979). An ALJ does not have the medical expertise to substitute his opinion as to the nature of a claimant's medical complaints for the supported and unrefuted diagnosis of the treating physician, particularly one who, as in this case, is a specialist. See <u>Frank v. Barnhart</u>, 326 F.3d 618 (5th Cir. 2002); <u>Schmidt v. Sullivan</u>, 914 F.2d 117, 118 (7th Cir. 1990), cert. den., 502 U.S. 901, 112 S.Ct. 278 (1991). The ALJ is not at liberty to make a medical judgment regarding the ability or disability of a claimant to engage in gainful activity, where such inference is not warranted by clinical findings. <u>Loza v. Apfel</u>, 219 F.3d 378, 395 (5th Cir. 2000), citing <u>Spencer v. Schweiker</u>, 678 F.2d 42, 45 (5th Cir.1982). ALJs have been warned by the courts against "playing doctor" and making their own independent medical assessments. <u>Frank</u>, 326 F.3d 618.

Dr. Daw's medical opinion concerning the residual effects of Ewing's sarcoma, chemotherapy, and radiation therapy, that Parks

suffers sustainability problems and pain, which are nonexertional impairments, is unrefuted. If the ALJ did not want to give Dr. Daw's opinion controlling weight, he should have obtained medical source statements or consultative examinations which explained or refuted Dr. Daw's opinion. The ALJ clearly erred in substituting his inexpert opinion as to Parks' medical condition for that of the treating physician. Therefore, substantial evidence does not support the ALJ's finding that Parks is not disabled.

Ground 3 - Residual Functional Capacity

Parks also contends that no evidence supports the ALJ's finding that Parks can perform the full range of sedentary work.

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations. 20 C.F.R. §404.1545, §416.945. Although the burden of proof in a disability case is on the claimant to show that he is unable to perform his usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. Herron v. Bowen, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

21

The ALJ must perform a "function-by-function" assessment of the claimant's ability to engage in work-related activities when making his RFC determination. SSR 96-8p. When making the RFC determination an ALJ must consider objective medical facts, diagnoses and medical opinion based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. 20 C.F.R. § 404.1545(a). Moreover, the ALJ must specify the evidentiary basis for his RFC determination. SSR 96-8p. Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

The ALJ found that Parks can perform the full range of sedentary work. The Social Security regulations define sedentary work in §404.1567(a) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Compare, Jackson v. Commissioner of Social Sec., 2011 WL 3154370 (E.D.Mich. 2011). SSR 83-10 elaborates on the definition of "sedentary work" and explains that "standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." See Myers v. Apfel, 238 F.3d 617, 620 (5th Cir.2001); Johnson v. Astrue, 291 Fed.Appx. 549 (5th Cir. 2010). Having to alternate between sitting and standing in order to work the entire day does not fit within the definition of sedentary work. Ripley, 67 F.3d at 557 n.25, citing Scott v. Shalala, 30

22

F.3d 33, 34 (5th Cir.1994).

In the case at bar, the ALJ found that Parks' suffers from residual effects from Ewing's sarcoma as alleged by Parks, but that the intensity, persistence and limiting effects of Parks' symptoms are not credible to the extent they are inconsistent with the ability to perform the full range of sedentary work (Tr. p. 12).

As discussed above, the ALJ discounted Dr. Daw's general assessment of Parks' functional limitations, but did not obtain another assessment from either a treating source or a consulting physician.  Instead, the ALJ made his own "medical assessment" of Parks' functional limitations and found he can perform the full range of sedentary work.

The ALJ does not cite any medical evidence in support of his finding that Parks can perform the full range of sedentary work, and ALJ failed to consider whether Parks can sit for at least six hours in an eight hour day.  Parks testified extensively that he has trouble sitting very long, he needs to get up and walk around at least once during each college class, and that he only takes classes with professors who will accommodate him in that respect, and Dr. Daw stated that Parks' primary treatment side effects have been decreased endurance and progressively worsening back pain, and that Parks is likely to have sustainability issues in terms of his ability to maintain activities.  Therefore, the ALJ erred in failing to consider whether Parks can sit six out of eight hours in order to perform the full range of sedentary work.

Substantial evidence does not support the ALJ's/Commissioner's

finding that Parks can perform the full range of sedentary work.

Ground 4 - Treating Source

Parks argues the ALJ failed to follow agency policy as reflected in 20 C.F.R. §404.151(e) and 416.912(e), which requires the treating source to be re-contacted in this context.

When the evidence from a medical source is inadequate to determine whether the claimant is disabled, the ALJ will first recontact the medical source. Spann v. Astrue, No. 5:09cv64, 2010 WL 815630, at *3 (N.D.Tex. March 10, 2010) (citing 20 C.F.R. § 416.912(e)(1)). The ALJ "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved." 20 C.F.R. § 416.912(e)(1). However, an ALJ is only required to seek additional evidence or clarification when there exists an ambiguity that must be resolved to determine whether the claimant is disabled. Spann, 2010 WL 815630, at *5 ( citing 20 C.F.R. § 416.912(e)(1)). No ambiguity needs to be resolved where there exists substantial evidence to support the ALJ's assessment.

Since substantial evidence does not support the ALJ's assessment that Parks can perform the full range of sedentary work, the ALJ should contact Parks' treating physicians to obtain medical source statements as to the limiting effects of his impairments (the residual effects of his treatment) and their effect on his residual functional capacity.

Ground 5 - Vocational Expert

Parks contends the record establishes that he has difficulty

24

with prolonged sitting, but the ALJ did not utilize a vocational expert to consider the extent that compromised the sedentary occupational base.  Since the ALJ's error in finding the claimant retains the capacity to perform a full range of sedentary work is not harmless, without vocational expert testimony addressing the claimant's non-exertional imitations, the Commissioner's burden of proof at the final step in the sequential evaluation process is unsatisfied.

The Fifth Circuit has consistently held that once the ALJ determines that a claimant suffers from a nonexertional impairment that prevents him from performing his past relevant work, the Commissioner must produce expert vocational testimony or other similar evidence to establish that other jobs exist in the nation economy that the claimant can perform.   Fields v. Bowen, 805 F.2d 1168, 1170 (5ᵗʰ Cir. 1986), and cases cited therein.

The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.   A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specified job.  Fields, 805 F.2d at 1171.

In the case at bar, the ALJ did not discuss (and apparently did not consider) Parks' nonexertional impairments of the residual effects of his treatment-back pain and decreased endurance-and, therefore, did not employ a VE.  On remand, consideration must be

given to the limiting effects of Parks' nonexertional impairments. At that time, a VE should be employed to determine whether there is any work that Parks can perform.

Remand

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law.  However, this does not entitle Parks to a decision in his favor based upon the existing record.  The record is simply inconclusive as to whether there are any jobs existing in sufficient numbers in the national economy which Parks can perform, given his true impairments.  Therefore, Parks' case should be remanded to the Commissioner for further proceedings.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Parks' appeal be GRANTED, the final decision of the Commissioner be VACATED, and the case be REMANDED to the Commissioner for further proceedings.

Under the provisions of 28 U.S.C. § 636(b)(1)© and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

26

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ___ day of June 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE